UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

UNITED STATES OF AMERICA,                     Case No. 6:13-cr-00338-AA

       Plaintiff,                                    OPINION AND ORDER

   v.

RAMON GARCIA-YEPEZ,

       Defendant.

---

AIKEN, Chief Judge:

    On July 17, 2013, defendant was indicted for illegal reentry in violation of 8 U.S.C. 1326(a). The indictment alleges that defendant illegally reentered the United States following his previous deportation on February 22, 2012. Defendant moves to dismiss the indictment on grounds that his initial removal proceedings underlying the indictment were defective. The government contends that defendant has not shown that he exhausted

1    - OPINION AND ORDER

his administrative remedies, that the proceedings were fundamentally unfair, or that he suffered prejudice as a result. See 8 U.S.C. § 1326(d).

## BACKGROUND

On July 24, 2006, defendant was issued a Notice to Appear informing him that Immigration and Custom Enforcement (ICE) believed he was subject to deportation. See Gov't Response, Ex. A. The Notice specifically alleged that on April 11, 2005, defendant had been convicted of possession of methamphetamine in violation of state law, and that his conviction rendered him subject to removal under the Immigration and Nationality Act. Defendant requested an immediate hearing. According to defendant, he was taken into custody by ICE and detained for two to three weeks in a small, crowded cell with two or three other people.

At his hearing before an Immigration Judge (IJ), defendant waived his right to counsel and stated that he understood his right to examine evidence and his right to appeal, which apparently had been provided previously. See Def. Ex. 101 at 1-2 (transcript of removal proceedings). Defendant also acknowledged that he had received the Notice to Appear. The IJ then recited the charge, which defendant acknowledged that he understood, and referenced documentation submitted by defendant indicating that he wanted to be deported as soon as possible. Id. at 2-3.

2 - OPINION AND ORDER

The IJ asked defendant if he admitted the April 11, 2005 conviction alleged in the notice to appear, and defendant stated that he admitted the conviction. The IJ advised defendant that he could find the charge to be correct based on defendant's admission and without any evidence from the government. Id. at 3. Defendant agreed that the charge was correct. Id.

The IJ then informed defendant that he was eligible to apply for cancellation of removal. Id. at 4-5. Defendant indicated he did not wish to apply for such relief. The IJ explained that declining to apply for cancellation of removal would result in defendant's permanent exclusion from the United States and asked if defendant still wished to forgo this right. Id. at 5. Defendant asked if he could be released pending a challenge to his removal. The IJ advised defendant that he could have a bond hearing, but, based on the drug charge, he was probably subject to mandatory custody. Id.

After a discussion of the difficulties defendant would face if he did not seek cancellation of removal, defendant reaffirmed his decision to forgo that opportunity. Id. at 5-6. Defendant also waived his right to seek voluntary departure and to appeal the removal order.

After his removal, defendant returned to the United States. In 2007, he was identified by immigration authorities and deported. He returned again, and according to the government, in 2010 he was

convicted of endangering the welfare of a minor, a misdemeanor. The government also maintains that in 2011, defendant committed two probation violations and was ultimately convicted of unlawful possession of methamphetamine.

In February 2012, defendant was convicted of illegal reentry in this court. United States v. Garcia-Yepez, 3:11-cr-00514-JO. Defendant's plea agreement in that case acknowledged the lawfulness of his initial removal. Defendant was sentenced to time served and deported.

Defendant again returned to the United States, leading to the current charge against him.

## DISCUSSION

"A defendant charged with illegal reentry pursuant to 8 U.S.C. § 1326 has a due process right to bring a collateral attack challenging the validity of his underlying deportation order because it serves as a predicate element of his conviction." United States v. Melendez-Castro, 671 F.3d 950, 953 (9th Cir. 2012) (per curiam). To successfully do so, a defendant must establish that: 1) the defendant exhausted any administrative remedies available "to seek relief against the order"; 2) the removal proceedings "improperly deprived" defendant of the "opportunity for judicial review" of the removal order; and 3) entry of the removal order was "fundamentally unfair." 8 U.S.C. § 1326(d).

Here, defendant argues that his removal and deportation on August 7, 2006 was defective because: 1) the IJ conducted a "perfunctory hearing" and erroneously informed defendant that he was subject to mandatory detention; 2) defendant's California controlled substance offense was a not deportable offense; 3) no document of defendant's conviction was admitted in the record; and 4) he was not afforded a meaningful opportunity for a voluntary departure.[1]

The government argues that defendant did not exhaust his administrative remedies to appeal the removal order and never challenged his removal until seeking dismissal in this case. The government emphasizes that defendant knowingly and voluntarily waived his right to appeal the initial removal order. Def. Ex. 101 at 2, 7. The government also points out that defendant never challenged his initial removal during his first criminal proceeding and instead specifically admitted the lawfulness of his removal. United States v. Garcia-Yepez, 3:11-cr-00514-JO (doc. 14). Accordingly, the government maintains that defendant's waiver of appeal was valid and bars collateral review. See United States v. Muro-Inclan, 249 F.3d 1180, 1182 (9th Cir. 2001).

---

[1] In his motion, defendant also argued that he was not advised of the Federal First Offender Act (FFOA), which would relieve him of deportability. However, defendant has withdrawn this argument.

5    - OPINION AND ORDER

Defendant contends that the IJ used "ominous and coercive language," suggested that a bond hearing or request for voluntary departure could take months, dismissed defendant's questions, and rushed defendant into making decisions. Def's Reply at 2, 4. Defendant thus maintains that his wavier of appeal was not made knowingly and that the "peremptory nature" of the initial removal proceedings were fundamentally unfair and "improperly deprived [defendant] of the opportunity for judicial review." Id. I am not persuaded.

While immigration proceedings may be imperfect, the record in this case does not reflect an unknowing or involuntary decision by defendant to forgo his rights to seek cancellation or to appeal; nor does it show a deprivation of defendant's right to seek judicial review.

During the initial removal proceeding, the IJ informed defendant of his right to seek cancellation of removal and explained the severe consequence - permanent exclusion from the United States - if defendant did not pursue this avenue of relief. The following is the colloquy between the IJ and defendant:

> IJ: Sir, you are eligible for a form of relief. It is called Cancellation of Removal and it is available to certain non-permanent residents. If granted, I could cancel your removal, allow you to retain your permanent residence and remain in the United States. Do you understand?

6    - OPINION AND ORDER

Defendant: Yes, sir.

IJ: In order to qualify you must at a minimum show that you have been a permanent resident for five years. That is not a problem. That you are residing continuously in the United States for a seven year period following your lawful admission and that you have not been convicted of an aggravated felony. As serious as your offense is, it is not an aggravated felony, therefore you are statutory [sic] eligible to apply for this form of relief. Do you understand?

Defendant: Yes, sir.

IJ: Would you like the opportunity to apply for this form of relief?

Defendant: No sir.

IJ: Let me tell you the effect of that decision so you can make it with full knowledge of its meaning and effect. If you do not seek this form, I'm not saying you'd be granted it but you'd have the opportunity, but if you choose not to seek this form of relief the effect . . . of your decision will be that I will issue an order of removal ordering you removed from the United States to Mexico. You will lose the permanent residency status that you have held since 1992, you will never be able to regain that status again, you will become inadmissible to the United States, and you will never be allowed legally into the United States for any reason. To visit someone who is dying, you will not be allowed back into the United States and if you ever return to the United States, without permission, you will be prosecuted, sent to prison for up to ten, possibly twenty years and then simply be re-deported back to Mexico. Those are the effects of your decision. Do you understand?

Defendant: Yes sir.

IJ: Do you still wish to give up this right to apply for cancellation of removal?

Defendant: Mmmm.... Say if I was to... If I was to.. If I was to fight my case...

7   - OPINION AND ORDER

IJ: Right...

Defendant: Would I be able to have a bail?

IJ: Would you be able to have a bond hearing? You would be able to have a bond hearing, but unfortunately because of this charge I would believe you are subject to mandatory custody which means you would not be released.

Defendant: Yeah. See...

IJ: So... probably we would schedule your hearing as quickly as possible. In other words, you don't want to spend a month here and rather spend the rest of your life in Mexico?

\*\*\*

Defendant: My brother, he's a citizen. You don't think he would be able to petition for me?

IJ: No. I think, yeah, he can petition for you from now until doomsday but there is no waiver of the ground of inadmissibility, the drugs. So you can petition, the petition can be approved, you can spending a lot of money filing an application and it would be denied because there is no waiver. When I said never, I meant never. This is your opportunity.... Now you got the situation... how old are you?

Defendant: 25

IJ: 25. That's right, you told me that already. I apologize. So, you have the situation where you don't like it here, right? I don't see why you would. But maybe you do. I don't know. Maybe you are different from everybody else in this room. You don't like it here. So a month or two or three or maybe even four, who knows, you'd rather than that and take a chance, can't guarantee you will be successful, spend the rest of your life in Mexico, come across the border illegally, be an illegal alien, run away from the border patrol not be able to get a job, not be able to do the things that permanent residents of the United States can do. Make up your mind. You're an adult. What do you want to do? You want to take

>   the time and I'll give you the application or do you want to say no?
>
>   Defendant: I want to say no.

Def's Ex. 101 at 4-7. The IJ subsequently informed defendant of his right to seek voluntary departure and to appeal the removal order, and defendant waived those rights.

While defendant interprets the IJ's comments as "ominous" or "coercive," I interpret them differently. Tacitly recognizing defendant's less than favorable confinement conditions, the IJ explained that defendant's choice was either to take a risk on cancellation, and spend few more weeks or months in confinement, or to accept a lifetime ban from the United States. The IJ attempted to explain in clear terms the consequences defendant would face if he waived his right to seek cancellation in order to obtain an immediate release. It appears that the IJ was trying to make defendant understand that a few more weeks or months of continued confinement might be worth the chance to retain his residency in the United States. Nonetheless, defendant chose not to pursue cancellation and subsequently waived voluntary departure and his right to appeal.

Thus, I do not find that the removal proceeding rendered defendant's waivers unknowing or deprived defendant of his right to judicial review. Moreover, defendant did not challenge his initial

9    - OPINION AND ORDER

removal during his 2012 criminal proceeding and even admitted the lawfulness of his removal.[2]

The cases relied on by defendant do not compel a different result. Defendant cites <u>United States v. Villa-Anguiano</u>, 727 F.3d 873, 800 (9th Cir. 2013) to support his argument that the government's instigation of criminal charges invites the court's scrutiny of initial removal proceedings. However, the Ninth Circuit's comments were made in the context of facts completely different from those presented in this case. There, a district court had dismissed pending § 1326 charges after finding that the defendant had been denied the right to counsel in his removal proceedings and had established prejudice as he was not informed of his eligibility for relief. <u>Id.</u> at 876. ICE nonetheless attempted to reinstate the removal order that district court found invalid. <u>Id.</u> at 877. The defendant petitioned for review of the reinstatement, challenging "the propriety of reinstating a removal order that has been invalidated on constitutional grounds for purposes of criminal prosecution." <u>Id.</u> at 879. The facts are therefore distinguishable from this case. Regardless, the Ninth

---

[2]Recently, defendant filed a motion under 28 U.S.C. § 2255 in that proceeding, alleging ineffective assistance of counsel based on counsel's failure to investigate his removal proceedings. That motion was denied. <u>United States v. Garcia-Yepez</u>, 3:11-cr-00514-JO (Doc. 21).

Circuit in <u>Villa-Anguiano</u> never suggested that collateral review of a removal proceeding is available after waiver of appeal and after conviction of a criminal offense based on such removal.

Defendant's reliance on <u>United States v. Aguilera-Rios</u>, 754 F.3d 1105 (9th Cir. 2014) is likewise unavailing. There, the Ninth Circuit found that the defendant's failure to raise a particular challenge to his removal order in the district court did not constitute a waiver of that ground when controlling law at the time foreclosed such a challenge. <u>Id.</u> at 1109-10. Here, defendant does not argue that controlling law precluded him from raising a previous challenge to his removal.

In sum, I find that defendant fails to establish that he exhausted his administrative remedies or that the removal proceedings improperly deprived him of the opportunity for judicial review. Consequently, defendant is barred from raising a collateral challenge to his initial removal in this proceeding.

## CONCLUSION

Defendant's Motion to Dismiss (doc. 24) is DENIED.

IT IS SO ORDERED.

Dated this 21st day of August, 2014.

_____
Ann Aiken
United States District Judge

11  - OPINION AND ORDER